## ELLIOTT and wife v. LEWIS, et al.

An administratrix who files a bill of foreclosure and has to take a journey to be examined in the suit, was allowed a fair charge in her accounts against the estate, for loss of time and traveling expenses.

A husband is not bound to maintain the children of his wife by a former marriage ; and a debt accrues for board and money paid. A mere declaration proved to have been made by him that he did not intend to charge them, will not destroy his right. And the court, in a cause, can order the amount to be paid directly to him, without its passing into the hands of an administrator, provided all debts of the deceased father have been paid.

Where an administratrix commits a *devastavit* before marriage, her husband is not liable after her death ; nor would he be, although it was committed during marriage, unless he acted and was benefited.

*Sept.* 17,
1835.

*Adminis-
tratrix.
Husband
and Wife.
Devastavit.*

THE bill was filed by the complainants, William Elliott and his wife, she being the administratrix of her former husband, George W. De Witt, deceased, for a foreclosure and sale on a mortgage, executed by George Lewis to George W. De Witt, of a tract of land in Franklin County, State of New-York.

After a decree and sale had been made, but before the purchase money was paid, Mrs. Elliott died.

Mr. James Smith, then, took out letters of administration *de bonis non, &c.* of the estate of the said George W. De Witt.

The nett proceeds of the mortgaged premises were six hundred and one dollars and fifty cents. These moneys were in the hands of the solicitor for the complainants, subject to the control of the court. Mr. Smith, the new administrator, presented a petition, praying that the money might be paid over

to him, to be applied and distributed as assets of the estate unadministered.

The testator had left two sons, Thomas H. De Witt and George L. De Witt, who were entitled to take as next of kin. They were of age.

It was admitted that there were no debts of the intestate remaining unpaid.

Besides the bond and mortgage of Lewis, (and which was for two thousand five hundred dollars,) the administratrix had realized eleven hundred dollars from the personal estate, after paying the debts; and this sum had likewise been lent by her to George Lewis, at interest on his promissory note only. This was done before her intermarriage with William Elliott.

These two sums, the mortgage of twenty-five hundred dollars and eleven hundred dollars in note, appeared to have constituted the clear surplus of the estate belonging to the widow and two children; the former being entitled to one third (as the widow) and the sons to the residue in equal parts.

The bond and mortgage were supposed to have been an abundant security for the twenty-five hundred dollars, and the note was deemed perfectly safe : this belief arose from the idea of Mr. Lewis's possessing a large estate. It turned out otherwise, for, upon his death, the lands were found to be a very insufficient security for the mortgage debt, and the embarrassed state of his affairs had rendered the collection of the note very doubtful.

On the presentation of the petition of the administrator *de bonis non*, the complainant Elliot set up equitable claims upon the fund produced by the sale of the mortgaged premises, and also against the children's shares, alleging also his legal right to receive the distributive share which belonged to his late wife. His counsel, likewise, claimed a lien upon the fund for fees in and about the foreclosure suit. A reference had been had to a master to ascertain the several claims, both legal and equitable, and to report upon them. The master found that the complainant's counsel had a claim amounting to one hundred and twenty dollars, for counsel fees, over and above his taxed costs in the suit, which were fairly chargeable by way of lien upon the fund. Likewise, that the complainant, Elliott, had no lien upon the fund generally, except for sixty dollars, being

VOL. III.—6

1835.

ELLIOTT
v.
LEWIS.

money paid by him for the expenses of himself and wife in coming on from Washington city to New-York, to be examined as witnesses in the cause touching the amount due on the bond and mortgage. The master excluded his claim to any part of the fund. The report found that William Elliott had a just claim against Thomas H. De Witt, one of the sons, amounting to seventy-two dollars and fifty cents for board in his family and which accrued while he was under age ; and, that he had also a just claim against the other son George L. De Witt, of two hundred dollars for board and of ninety-seven dollars and fifty-one cents for money paid for his schooling, all of which had accrued while he was under age, amounting together to two hundred and ninety-seven dollars and fifty-one cents. There were various other facts found by the master. The testimony taken by him had been returned with his report.

Two exceptions were interposed on the part of the sons and of the administrator *de bonis non ;* one, in respect to the allowance of one hundred and twenty dollars for counsel fees, and the other as to the sixty dollars for travelling expenses. The complainant, William Elliott, had taken six exceptions.

The cause was now heard upon the exceptions and the whole equity.

Mr. *E. Paine,* for the complainants.

Mr. *Smith,* for the defendants.

*Jan.* 11, 1836.

THE VICE-CHANCELLOR :—With respect to the counsel fees, I consider that the evidence sustains the claim and justifies the allowance of the amount reported. There were difficulties in the foreclosure suit in relation to title and boundaries of the lands, embracing a contest with the purchaser to compel him to fulfil his contract at the master's sale, and all of which required the services of counsel, while it appears that the taxable costs were not a sufficient compensation. So, with respect to the expenses of Mr. and Mrs. Elliott in coming to New-York to be examined touching payments on the bond and mortgage, this appears to have been indispensable and the expense was unavoidably incurred. The principal objection

is, that their fees for travel and attendance, as witnesses, should have been included in the taxed costs ; but they were parties and examined as such and not as witnesses ; and, perhaps, did not stand on the same footing as witnesses, in regard to fees. Besides, if they were considered precisely as witnesses, the law would only allow them fees to be taxed against the defendants in the suit, for their time and travel after crossing the boundary line of this state. Legal fees, therefore, would be no compensation for the expenses of their journey in coming all the way from Washington and returning, and sixty dollars are proved to be but a fair allowance in that respect.

As regards the exceptions, taken on the part of the complainants, I think none of them are sustainable. There is only one which appears to present any very serious question, and that is the fourth ; that the master has not allowed to Mr. Elliott the distributive share of the estate to which his deceased wife was entitled. Upon what ground his claim to such share of the estate, in virtue of his marital right, was rejected or postponed or not allowed does not distinctly appear. It is shown, however, by the testimony, that soon after the eleven hundred dollars were lent to George Lewis, and his note given to the widow, then Mrs. De Witt, for the money, an understanding took place between her and Mr. Lewis, who appeared to act as the guardian or next friend of the two children, then infants, that these eleven hundred dollars should be considered as set apart for her share of the clear surplus of the estate in the distribution ; and that the twenty-five hundred dollars, secured by the bond and mortgage, should remain to the children, to be equally divided between them as their distributive shares. From that time, it would seem, this was treated as a division of the estate ; and hence, some advances made and supplies furnished by Mr. Lewis towards the education and maintenance of the boys were charged by him against the bond and mortgage and deducted from the amount due thereon, when the principal and interest were computed by the master preparatory to the decree. If this sort of family understanding or arrangement was binding upon the children, so as to make them exclusively the owners of the bond and mortgage, leaving their mother to be the sole owner of the eleven hundred dollars payable by the note, then it would be for the court

**1835.**

**ELLIOTT**
**v.**
**LEWIS.**

so to adjudge and to hold Mr. Elliott precluded from claiming any portion of the proceeds of the mortgage, as belonging to his wife. But the children are not bound by such a division, unless they choose, now that they are of age, to ratify it. This they have not done, though I understand Mr. Elliott's counsel to say, that he is willing that the note for the eleven hundred dollars should still be considered as his wife's share in the distribution. Indeed, he asks the court so to decree; but a decree to that effect cannot at present be made, without the assent of the other side. I am, nevertheless, satisfied to let the report stand, and not to allow the complainant's fourth exception. This, however, is without prejudice to Mr. Elliott's right to claim hereafter his late wife's full distributive share out of any moneys that may be collected or come into the hands of the administrator *de bonis non &c.* from the estate of Lewis, either upon the note or the bond. Of course, these instruments go into the hands of the present administrator, for the purpose of being collected as assets unadministered, unless Thomas and George De Witt shall now elect to consider a distribution of what remained of their father's estate, as having been made, and the bond against George Lewis's estate, for the balance due upon it, as belonging to them for what it is worth; and the note of eleven hundred dollars as the property of their mother, set apart by way of distribution, and passing by the marriage to Mr. Elliott.

The next question that arises is, in relation to the claims of Mr. Elliott individually against Thomas and George for necessaries furnished them during minority, as reported by the master. These appear to be fair and reasonable demands. A husband is not bound to maintain the children of his wife by a former marriage. This is well settled: *Billingsly* v. *Critchet*, 1 Bro. C. C. 268; *Minden* v. *Cox*, 7 Cowen, 237.

And for their board, while living with him, and for the money he was compelled to pay for one of them, debts justly accrued. The declaration, as testified to by one witness, that he did not intend to charge them for board, is not sufficient to deprive him of the right. Can this court, then, apply the money belonging to them, while under its control, to the payment of such debts? If the court should not interfere in behalf of Mr. Elliott, as creditor, the money would pass to them

through the hands of the administrator, and they would be liable to be sued at law. Why not, then, order the debts to be paid at once, to prevent this circuity ? The money is, as it were, in the possession of Mr. Elliott; for it was decreed to be paid over to him jointly with his wife as administratrix; and the law can allow him to retain for his demands, without doing any violence to the rights of the children. It is true, that, by this means, the present administrator does not get possession of the fund. If there were any debts unpaid against the estate of their father, who has been dead ten years, it would not be right to withhold the money from the administrator. But it is frankly admitted there are none ; and if the administrator receives the money, it will be only for the purpose of distribution. I, therefore, think there is no difficulty in appropriating the fund immediately, as far as may be necessary, to the payment of the debts of the distributees.

But it is contended, that, even if the money now in hand can be appropriated to the payment of the debts of Thomas and George, the complainant, William Elliott, is chargeable with larger sums of money owing or belonging to their father's estate than they are owing to him ; and, consequently, that he ought to be held to account before he is permitted to take pay from them.

The liability contended for rests principally upon the ground of an alleged *devastavit*, in lending the eleven hundred dollars upon the personal security of Lewis, by which the money is either lost or its recovery rendered very doubtful. If such a lending or investment amount to a *devastavit*, it occurred before the marriage of the complainant with the administratrix; and after her death, he is not liable for the consequences. Even if it occurred during the coverture, he is not liable after her death, unless he concurred in the misapplication and received some benefit from it: 1 Roper Hus. and Wife, 187, 188. But if there be neglect imputable to the complainant personally, in not calling in the money, while he was at liberty to act in the administration jointly with his wife, and, by means of such neglect or omission, the money is lost, the only consequence then, as between the complainant and Thomas and George, might be to charge him with the loss, by compelling him to take the note upon himself, as his wife's

share of the estate, and to hold them entitled to the more available part of the estate, *viz.* the bond and mortgage, as to which there can be no imputation of a *devastavit ;* for it is not the duty of an executor or administrator to call in money invested on real security, where no risk is apparent : *Howe* v. *Earl of Dartmouth,* 7 Ves. 150 ; Williams on Ex'rs. 1116.

Here, the twenty-five hundred dollars were invested by the intestate himself ; and there was nothing to induce a suspicion that the money was otherwise than abundantly secured. That no more has been realized from it, is not the fault of the complainant or his wife. The sons Thomas and George can have the exclusive benefit of whatever more can be recovered on the bond from the estate of George Lewis, provided they ratify the arrangement before spoken of. If they do not elect to take the bond to themselves, they now have all that has as yet been realized from the mortgage security ; and there is no good reason why they should not pay their individual debts out of it, leaving the question of *devastavit,* in relation to the eleven hundred dollars, still open and to be adjusted, whenever it shall become necessary.

Another claim, set up against the complainant, is, that, during the coverture, he received (and the master's report states the fact) one hundred and forty-two dollars belonging to the estate of the intestate. This sum, as I understand, is made up of small payments from time to time made by Mr. Lewis, on account of interest on the note of eleven hundred dollars, and appears to have been paid to Mr. or Mrs. Elliott, but to which does not appear, upon the supposition, that, in the division or distribution between her and her children, the note was set apart for her share. At the same time, Mr. Lewis was making advances, on account of the interest on the bond and mortgage, to and for the use of the children. All this appears by Mr. Lewis's account-book, in which the entries are all made in his hand-writing. Under these circumstances, I do not see that Mr. Elliott, at present, is to be charged with the one hundred and forty-two dollars, as money belonging to the estate, or in which the children have any interest. It was certainly paid as Mrs. Elliott's own money ; and if Mr. Elliott, in right of his wife, is to take the note to himself, upon the ground of a *devastavit,* then he ought to be

permitted to retain the one hundred and forty-two dollars. At any rate, when the question, in relation to the distribution of the estate, comes to be finally settled, if it may not be deemed already settled between the mother and her children, it will be time to call Mr. Elliott to account for the one hundred and forty-two dollars; bearing in mind, at the same time, that the children received, on account of the mortgage, three hundred and seventeen dollars, as stated in the master's report. There are also some articles of household furniture in Mr. Elliott's possession, which, it is said, he must account for. These, originally, belonged to the intestate's estate and were held by the widow at the time of their intermarriage; but whether they were not bought in and paid for by her or had not, in some way, become her individual property, does not appear. This, likewise, is a matter which I think the court has nothing to do with at present.

Upon the whole, therefore, I shall overrule the exceptions on both sides to the master's report; and, upon the basis of the report, I shall order that the one hundred and twenty dollars for counsel fees and the sixty dollars for travelling expenses be paid out of the fund generally; also the master's costs of the reference and of making the report to be taxed. In the next place, out of one half of the residue, as belonging to Thomas H. De Witt, that the complainant retain or be paid the seventy-two dollars and fifty cents reported to be owing by him to the complainant; and that the balance of such half be paid over to Thomas H. De Witt. That the other half of the residue, as belonging to George L. De Witt, be retained and applied towards paying the two hundred and ninety-seven dollars and fifty-one cents reported to be owing by him to the complainant.

Each party to bear and pay his own costs of this proceeding, except the master's bill, which is to be paid out of the general fund, as above directed.